IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KENNETH BROWN, | ) | |
|---|---|---|
| | ) | |
| *Brown*, | ) | |
| v. | ) | No. 06 C 3479 |
| | ) | |
| KEN BARTLEY, | ) | Honorable David H. Coar |
| Warden, Pinckneyville Correctional Center, | ) | |
| | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Kenneth Brown's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

**BACKGROUND**

**I.     First State Court Proceeding**

Brown was tried in the Circuit Court of Cook County on six separate indictments arising from a series of attacks on women in the North Side of Chicago. The cases were consolidated and tried simultaneously before a single jury. Brown was initially charged with an attack on a seventh woman, but the charges were dropped after testing revealed that DNA evidence recovered from the victim did not match Brown's DNA profile.

1

On September 16, 1998, the jury convicted Brown of kidnapping and unlawful restraint under one indictment, attempted criminal sexual assault under another, and unlawful restraint under a third. The jury found Brown not guilty of the remaining charges. The trial court sentenced Brown to consecutive terms of seven years for kidnapping, three years for each unlawful restraint conviction, and seven years for the attempted criminal sexual assault conviction.

On appeal before the Illinois Appellate Court, Brown presented the following issues: (1) the trial court erred in ruling that evidence of his other indictments would be admissible to show *modus operandi*; (2) the trial court erred in excluding evidence that a look-alike perpetrator was attacking women in the same neighborhood at the same time as the attacks for which Brown was charged; (3) the trial court should have merged the kidnapping and unlawful restraint convictions; and (4) the trial court erred in imposing consecutive sentences on the two counts.

The state conceded that Brown was improperly sentenced for both kidnapping and unlawful restraint. On May 31, 2000, the appellate court vacated the unlawful restraint conviction and reduced Brown's overall sentence from 20 years to 17 years. It affirmed the remainder of Brown's convictions and sentences. On the DNA issue, the court held that it was error for the trial court to bar the introduction of the evidence, but found the error to be harmless in light of the strong evidence against Brown.

Brown filed a *pro se* petition for leave to appeal ("PLA") to the Illinois Supreme Court on August 21, 2000. In his PLA, Brown presented a number of novel claims, alleging that he had been denied due process and equal protection of the law; that he had not received a fair and impartial trial; and that the judge, prosecuting attorneys, and

defense counsel engaged in various forms of misconduct. The state supreme court denied Brown's PLA on October 4, 2000.

On February 16, 2001, Brown filed a *pro se* petition for post-conviction relief. He argued that the trial court violated the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), when it applied consecutive sentences and prohibited Brown from presenting DNA evidence at trial. The trial court granted the State's motion to dismiss on June 19, 2003.

The Illinois Appellate Court affirmed the dismissal on May 23, 2005. In his *pro se* PLA, Brown again alleged novel claims. In addition to allegations that the trial court had erred in barring the DNA evidence, Brown argued that he was denied due process of the law, equal protection of the law, and a fair and impartial trial; that the State failed to prove every allegation of the offense beyond a reasonable doubt; and that the prosecuting attorney made prejudicial, inflammatory, and erroneous statements during closing argument. The Illinois Supreme Court denied Brown's PLA on May 24, 2006.

## II. Second State Court Proceeding

On June 23, 1999, following a bench trial before a different judge in the Circuit Court of Cook County, Brown was convicted of attempted first-degree murder, attempted criminal sexual assault, unlawful restraint, and aggravated battery for an attack on a woman in a suburb of Chicago. At sentencing, the trial court merged the counts and sentenced Brown to 30 years' imprisonment, which was to run consecutively to Brown's existing 17 year sentence.

Brown appealed to the Illinois Appellate Court, presenting the following issues on appeal: (1) the trial court erred in admitting evidence of prior statements of identification; (2) Brown was denied effective assistance of counsel; (3) the trial court erroneously found defendant had two conflicting intents; (4) the court erred in permitting certain photographs into evidence. The appellate court affirmed Brown's conviction and sentence on March 11, 2002. Brown challenged the appellate court's holding on the issue of his intent in his PLA to the Illinois Supreme Court. The supreme court denied Brown's PLA on May 30, 2002.

### III.     Federal Habeas Petition

On June 15, 2006, Brown filed the instant petition for federal habeas corpus relief. The grounds upon which Brown requests relief are not entirely clear, but it appears that Brown seeks to argue the following:

- A. DNA evidence showing that Brown was not the perpetrator of a rape for which he was misidentified as a perpetrator allegedly proves that he was mistaken for someone else during all other lineups. Brown contends that a failure to vacate his sentence based on this DNA evidence constitutes a violation of 725 ILCS 5/116-3.
- B. Brown was subjected to double jeopardy when, at his second state court proceeding, he was convicted of a crime that allegedly occurred at the same time as an attack for which he was indicted at his first proceeding.[1]
- C. General allegations that the Court construes as sufficiency of the evidence claims. Brown argues that his height and weight differ from that of the attacker described by one of the victims. Brown also complains that, at his first trial, the jury viewed a computer-generated photograph showing him with a gold hoop earring, which he claims not to wear.

---

[1] Both attacks allegedly occurred at 4:00 am on April 5, 1997. However, a jury found Brown not guilty of the North Chicago attack, acquitting him of the related count of attempted criminal sexual assault in the first trial.

D. Police misconduct in a variety of incidents. Brown alleges that police made visits to victims' homes to persuade them to identify him in lineups. A police detective also allegedly brought a witness from the second state case to view Brown during the proceedings of his first state case.

E. Judicial misconduct on the part of the trial judge for the first state proceeding. The judge allegedly yelled in court, required the jury to reach a verdict by a set time, and barred Brown's family, character witnesses, and supporters from the courtroom.

F. Prosecutorial misconduct by prosecutors who allegedly sought Brown's conviction in bad faith to promote their own careers. Brown contends that the behavior of the judge and prosecutors combined to violate his rights to a fair and impartial trial.

## LEGAL STANDARD

Section 2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). A federal court may only consider the merits of a writ of habeas corpus after the petitioner has (1) exhausted all available state court remedies; and (2) first presented any federal claim in state court. *See* 28 U.S.C. § 2254(c) (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994). Any claim that has not been exhausted in the available state courts will be considered defaulted and therefore procedurally barred.

Federal prisoners may challenge their detention if their conviction or sentence is based on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal citation and quotation marks omitted); *see also* 28 U.S.C. § 2255. A federal court will not grant relief on claims that have been decided on

the merits by state courts unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996).

## ANALYSIS

### I. Statute of Limitations

Claims arising from Brown's second state court proceeding are barred by the relevant statute of limitations. 28 U.S.C. § 2244(d) applies a one year period of limitation to an application for a writ of habeas corpus. If a petitioner does not allege a state-created impediment to filing, assert a newly recognized constitutional right, or present subsequently discovered evidence, the period runs "from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(a)(A).

Brown's PLA to the Illinois Supreme Court challenging the review of his second state court proceeding was denied on May 30, 2002. The time for seeking direct review before the United States Supreme Court expired 90 days later, on August 29, 2002. Sup.Ct. R. 13. Because Brown did not file a petition for certiorari, his judgment became final on that date. Yet, almost four years passed between then and the filing of his instant federal habeas petition on June 15, 2006.

Brown claims that "the Appeallate [sic] Court held my [first state case] in Court for three years which held up the process of filing [a habeas petition for the second state case] in a timely manner." (Pet. Reply Br. At 3.) Delays in the appellate review of one case do not, absent other interference, prevent a prisoner from petitioning for a writ of habeas corpus in another case. Nor does the actual course of events reveal any filing obstacles. The Illinois Supreme Court denied Brown's PLA for his first state proceeding on October 4, 2000. Brown did not petition for a writ of certiorari from the United States Supreme Court. Therefore, direct review of Brown's first trial concluded almost three years before the expiration of the period of limitations for habeas petitions in his second state proceeding. Only Brown's post-conviction motion, premised on violations of *Apprendi* in his first state case, lagged.

Accordingly, Brown has not alleged a state-created impediment to filing that warrants the tolling of the statute of limitations. All claims arising out of Brown's second state court proceeding, including related complaints of double jeopardy and police misconduct, are time-barred under 28 U.S.C. § 2244(d)(1)(A).

## II.     Procedural Default

Claims arising out of Brown's first state court proceeding were filed in a timely manner. However, under AEDPA, a petitioner must exhaust all available remedies in state court before applying for a writ of habeas corpus. *See* 28 U.S.C. § 2254(b)(1). This requirement gives state courts a fair opportunity to consider and correct constitutional violations before they are presented to a federal court. *See United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984).

A claim is not "fairly presented" for federal habeas purposes if raised for the first time in state court in a petition for discretionary review. *Alvarez v. McGinnis*, 4 F.3d 531, 534-35 (7th Cir. 1993) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Brown has raised a number of claims for the first time in his PLA, including generalized references to violations of his rights to due process of the law, equal protection of the law, and a fair and impartial trial; allegations of ineffective counsel; and allegations of prosecutorial and judicial conduct. It is not entirely clear how many of those claims he revives in his petition for habeas relief. To the extent that any of them are presented, though, they are procedurally defaulted.

All claims presented for the first time in Brown's habeas petition are likewise procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). This includes any remaining claims drawing from Brown's allegations of evidentiary sufficiency, police misconduct, judicial misconduct, and prosecutorial misconduct.

### III. DNA Evidence

Brown's only exhausted claim pertains to the trial court's refusal to admit DNA evidence exonerating Brown of a rape for which he was misidentified as the perpetrator in a lineup. The charges were dropped thereafter; Brown was never indicted for the attack. Brown contends that, because the DNA evidence suggested the existence of a look-alike perpetrator, it proves that he is innocent of his indicted crimes.

To begin, the Court finds unavailing any of Brown's recent assertions that 725 ILCS 5/116-3 has been violated. Habeas relief is only appropriate when a petitioner is

being held in violation of the Constitution or federal law, not state law. 28 U.S.C. § 2254(a). Rather, the Court assumes that Brown seeks to reassert the argument seemingly posed in his post-conviction motion for relief: namely, that the denial of DNA evidence violated the Supreme Court's holding in *Apprendi*.

*Apprendi* stands for the proposition that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 466. The Court is unable to draw a connection between the holding in *Apprendi* and Brown's DNA dispute, as the trial judge did not consider DNA evidence when sentencing Brown beyond any statutory maximum. Brown's extended sentence was the result of consecutive sentencing, which does not fall awry of *Apprendi*. *See Oregon v. Ice*, 129 S.Ct. 711, 712 (2009) (holding that *Apprendi* does not inhibit judges, as opposed to juries, from finding of facts necessary to impose consecutive sentences).

The only constitutional claims related to the trial court's exclusion of Brown's DNA evidence arose in the context of his direct appeal of his first state proceeding. In *Cawley v. DeTella*, the Seventh Circuit declined to overturn, on that case's facts, the rule that "a petitioner who has been rejected once by the Illinois Supreme Court and who then invoked the Illinois post-conviction review process, making the same arguments" need not "once again take those claims all the way to the Illinois Supreme Court before the federal courts will hear his or her habeas petition." 71 F.3d 691, 695 n. 7 (7th Cir. 1995) (citing *United States ex rel. Partee v. Lane*, 926 F.2d 694, 699 n. 3 (7th Cir. 1991), *cert. denied*, 502 U.S. 1116 (1992)). Arguably, this rule does not apply to Brown because the claim presented on direct appeal (premised on the Due Process, Confrontation, and

9

Compulsory Process Clauses) is not the "same" as the *Apprendi* claim presented in his post-conviction motion (presumably drawn from the Sixth Amendment's jury-trial guarantee). However, because analyzing the specific nature of Brown's *pro se* claims is a true challenge, the Court readdresses the issue out of an abundance of caution.

On direct appeal of his first state case, and in his PLA to the state supreme court, Brown raised the question of whether his due process rights were violated when the trial court excluded evidence that a DNA test had cleared him in another charged attack. Brown argued that the trial court's refusal to admit the evidence violated his right to present relevant and competent evidence in his defense. *See Crane v. Kentucky*, 476 U.S. 683, 683 (1986); *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).

The state appellate court examined the issue in detail.[2] It observed that the six attacks for which Brown was indicted were executed in remarkably similar manners, whereas the seventh attack, and source of the negative DNA evidence, was clearly an outlier. All six attacks occurred outdoors, during the late or early morning hours, while the victims were alone and exiting their cars. Each woman was attacked from behind, and three had their mouths covered. The attacker spoke to four of the women, either declaring that he wanted sex or instructing them to be quiet, take off their pants, or shut up. All the victims easily scared off their attacker, either by biting his finger or alerting a neighbor or passerby. In contrast, the victim of the seventh attack was raped by an intruder who had broken into her home, did not speak, and wore gloves.

---

[2] Brown does not challenge the facts set forth by the appellate court, nor has he offered "clear and convincing evidence" rebutting those facts, as required by 28 U.S.C. 2254(e)(1). As a result, this Court is obliged to respect the state court's findings of fact and presume them to be correct. *See Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

A jury convicted Brown of attacking three women. Two of these attacks occurred within one hour of each other. The two women gave nearly identical descriptions of Brown and his distinct hat. One of the women was able to describe Brown's car, where the police later found the hat. A neighbor corroborated the description of Brown offered by the third victim, who struggled with him on a well-lit porch. All three women identified Brown in a lineup and testified consistently with their earlier statements at trial. Brown's testimony, on the other hand, was impeached by his pre-trial testimony and his own alibi's testimony.

The appellate court found that the trial court erred in barring the DNA evidence, but that the error was harmless in light of the overwhelming evidence in support of Brown's guilt. The court concluded that admitting evidence of a look-alike perpetrator would not have made Brown's guilt in the three attacks less likely, nor would it have changed the jury's verdict. The conclusion was clearly reasonable. *See Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) (to find constitutional error, federal court must determine if the state court's harmless-error analysis was unreasonable). Given the strong evidence against Brown and the tenuous implications of the DNA evidence relating to the seventh attack, the trial court's error did not have "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *see also Fry v. Pliler,* 551 U.S. 112, 121-22 (2007). Exclusion of the evidence therefore does not entitle Brown to habeas relief.

### IV. Failure to Show Cause for Procedural Default

To excuse the procedural default of the majority of his claims, Brown must demonstrate cause and prejudice for the failure to raise the claims at issue, or why default under the circumstances would result in "a fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *see also Coleman*, 501 U.S. at 750.

Brown argues that cause exists because his state-appointed attorneys colluded with prosecutors to cover up his DNA evidence, and ignored him whenever he asked to schedule oral arguments to present his case of mistaken identity. (Pet. At 6-B.)

Ineffective assistance of counsel issues must be presented as an independent claim to the Illinois courts before a federal court can consider whether it indeed constitutes cause. *See Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995) ("Before a state prisoner can use ineffective assistance of counsel as cause for a procedural default, he must first present this claim as an independent claim to the state courts either on direct appeal or in post-conviction proceedings.") Because Brown failed to present such a claim in a state court petition for post-conviction relief, he has procedurally defaulted this claim.

Alternatively, to establish a miscarriage of justice, Petitioner "must demonstrate that he is actually innocent of the crime for which he was convicted – that is, he must convince the court that no reasonable juror would have found him guilty but for the error(s) allegedly committed by the state court." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (citing *Schulp v. Delo*, 513 U.S. 298, 327-29 (1995)). To support such a

claim, a petitioner must come forward with new reliable evidence that was not presented at trial. *See Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003).

Brown has indicated that he is innocent, yet offers no new evidence to that effect. He insists that the DNA evidence clears him of all guilt, yet the DNA evidence only pertains to a crime for which he was not indicted. Unlike the exonerating DNA evidence Brown points to in other cases, his evidence has no direct bearing on the crimes for which he was ultimately convicted. Moreover, to grant relief, the Court must be convinced that no reasonable juror would have found Brown guilty had the DNA evidence been presented at trial. For the reasons described above, this is not the case.

Ultimately, Brown has failed to provide, and the Court is unable to surmise, any viable grounds for excusing his procedural defaults.

## CONCLUSION

For the foregoing reasons, Brown's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **March 11, 2010**